| | |
|---|---|
| DISTRICT COURT, COUNTY OF DOUGLAS, STATE OF COLORADO<br><br>Court Address:<br>4000 Justice Way<br>Castle Rock, CO 80109 | 2019 AUG 13 PH 3: 03<br>DATE FILED: August 13, 2019<br>CASE NUMBER: 2019CV67 |
| **Plaintiff:** BRYAN GLOVER, Individually and as Representative of the ESTATE OF JAMIE GLOVER, and on behalf of ROSIE GLOVER,<br><br>v.<br><br>**Defendant:** HAWKSBILL BOTANICALS INC. | ▲ COURT USE ONLY ▲ |
| Bryan Glover, Pro Se<br><br>Address:1738 Jules Court, Highlands Ranch, CO 80126<br>Phone: 714-726-4505<br>Email: bryan.glover@valorchristian.com | Case Number: 19CV67<br><br>Div.:   Ctrm.: 3 |

## COMPLAINT AND JURY DEMAND

Plaintiff Bryan Glover, individually and on behalf of the Estate of Jamie Glover, and on behalf of Rosie Glover, for his Complaint against the Defendant, alleges as follows:

### I.   JURISDICTION AND VENUE

1.       Jurisdiction and Venue are proper in Douglas County, Colorado because the incident giving rise to this case occurred in Douglas County, Colorado and the damages sought by this Plaintiff is within the jurisdictional limit of this Court.

2.       At all times relevant hereto, Plaintiff has been a resident of Douglas County, Colorado.

3.       Defendant Hawksbill Botanicals Inc. is an out of state corporation which does business in Colorado thereby availing itself to Colorado law.

## II.    INTRODUCTION

4.      On August 14, 2017 the life of thirty-three (33) year-old Jamie Glover (hereinafter "Jamie") was tragically cut short by an "herbal supplement" known as Kratom. At the time of her death, Jamie was a wife and mother to five (5) children.

5.      Although Kratom is marketed and sold as an herbal supplement, the reality is that Kratom is a powerful and dangerous opioid.

6.      Kratom, or *Mitragyna speciosa*, is a plant grown in Thailand, Malaysia, Indonesia and Papua New Guinea.

7.      On August 14, 2017, and after having consumed Kratom for several months, Jamie died of a Kratom overdose. The death certificate lists the manner of death as an "accident," and lists the cause of death as "complications of combined drug intoxication." Jamie had consumed multiple strains of Kratom immediately prior to her passing.

8.      Defendant Hawksbill Botanicals Inc. (hereinafter "Defendant Hawksbill") sold Jamie the deadly Kratom through its online website, marketing the substance with absolutely no warnings or information of any kind regarding the dangerous and harmful effects of the substance.

9.      Hawskbill mailed the deadly Kratom to Jamie. The packaging and labeling used by Defendant Hawksbill when mailing the Kratom to Jamie was without any warnings or information of any kind regarding the dangerous and harmful effects of the substance.

10.      As discussed more fully herein, Kratom has a deadly history and is under scrutiny by the United States Drug Enforcement Administration ("DEA) and the Food and Drug Administration ("FDA"); despite this, Defendant Hawksbill continues to reap the economic benefits of selling Kratom to unsuspecting users and marketing it as a harmless herbal supplement all the while knowing of its potentially fatal effects.

Exhibit A to Notice of Removal

11.     Jamie's life and future were taken from her by Defendant Hawksbill – a company interested only in concealing the dangerous effects of the opioids it masquerades around as an "herbal supplement" so that it can continue to peddle its deadly products.

## III.     PARTIES

12.     Plaintiff Bryan Glover (hereinafter "Bryan") is an adult citizen and a resident of Douglas County, Colorado., residing at 1738 Jules Court, Highlands Ranch, CO 80126. At all times relevant hereto, Bryan was Jamie's husband. Rosie Glover ("hereinafter "Rosie") is a minor, being three (3) years of age. Rosie is the daughter of Jamie and Bryan. Rosie has resided at 1738 Jules Court, Highlands Ranch, CO 80126 for all her life.

13.     Defendant Hawksbill is a corporation or other business entity organized and existing under the laws of the State of Florida, with a principal place of business at 10380 SW Village Center Dr., Suite 117, Port Saint Lucie, FL 34987.

14.     At all times relevant hereto, Defendant Hawksbill was acting by and through its agents, ostensible agents, apparent agents, servants, workmen and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant Hawksbill.

15.     At all times relevant hereto, Defendant Hawksbill purposely established significant contacts in Colorado, has carried-out, and continues to carry-out, continuous and systematic business activities in Colorado, and regularly conducts business in Douglas County.

## IV.     GENERAL ALLEGATIONS

### A. Kratom's Deadly History

16.     Kratom is a dangerous and addictive opioid that is marketed and sold as an herbal supplement or remedy.

Exhibit A to Notice of Removal

17.     Companies that produce and sell Kratom, including Defendant Hawksbill, claim that Kratom can be used to cure or treat a variety of conditions or ailments, including anxiety, depression, fatigue, and even opioid cessation, despite the fact that Kratom is itself an opioid.

18.     In August 2016, the DEA announced that it was temporarily reclassifying Kratom as a Schedule I drug; however, after organized backlash by Kratom advocacy groups, such as the American Kratom Association, the DEA decided in October 2016 to postpone the reclassification of Kratom to allow for further public comment.

19.     The FDA has also identified the lethal effects of Kratom, citing 44 reported deaths "associated with the use of Kratom."

20.     The FDA has directly warned suppliers of Kratom, including Defendant Hawksbill, that they must cease the sale of products containing Kratom due to the dangerous and potentially fatal effects on unsuspecting consumers.

21.     Despite this warning, Defendant Hawksbill continues to sell Kratom without any warnings whatsoever concerning the dangerous effects of Kratom, and instead touting Kratom as a natural, herbal treatment for a variety of ailments, including opioid addiction and opioid withdrawal.

**B. The Tragic Death of Jamie Glover**

22.     On August 14, 2017 the deadly history of Kratom, and Defendant Hawksbill's efforts to conceal the dangerous effects of the drug so it could continue reaping the economic benefits of selling Kratom, culminated in the tragic and untimely death of Jamie.

23.     Upon information and belief, April - July 2017 Jamie purchased Kratom from Defendant Hawksbill through its online shop. Jamie made multiple purchases of Kratom from Defendant Hawksbill during this time period.

Exhibit A to Notice of Removal

24.     For each sale, Defendant Hawksbill shipped its Kratom from its Port Saint Lucie business directly to Jamie's home in Douglas County.

25.     Jamie, believing the lies and misrepresentations of Defendant Hawksbill, began taking Kratom to alleviate anxiety and pain.

26.     Jamie was unaware of the potentially lethal side effects of Kratom, and Defendant Hawksbill sold its Kratom to Jamie in packaging that contained absolutely no warnings or information on the potential side effects or dangers of the product.

27.     Defendant Hawksbill's website similarly contains absolutely no warnings or information of any kind regarding the dangerous and potentially deadly effects of Kratom.

28.     Defendant Hawksbill knew, or in the exercise of reasonable care, should have known of the devastating injuries, addiction and/or death that would befall its customers upon ingestion of its product, Kratom.

29.     Defendant Hawksbill knew, or in the exercise of reasonable care, should have known that selling its Kratom in packaging that contained no warning or information regarding the dangerous side effects of the Kratom would result in serious injury, addiction and/or death to its customers.

30.     Despite this knowledge, Defendant Hawksbill outrageously continued to sell its Kratom and took absolutely no steps to provide its unsuspecting customers, including Jamie, with any information or warnings of the potentially dangerous side effects.

31.     Defendant Hawksbill's deliberate decision to deprive its customers of warnings and information regarding the dangerous effects of Kratom was made for purely economic reasons.

32.     Defendant Hawksbill chose profits over the safety of its customers, including Jamie Glover.

Exhibit A to Notice of Removal

33.     Solely and as a direct result of the negligence, gross negligence, carelessness, recklessness and outrageous acts of Defendant Hawksbill, Plaintiff's decedent, Jamie Glover, sustained injuries that led to her death; she sustained conscious pain and suffering and mental anguish and fear of impending death; she sustained a permanent loss of earning capacity; she has sustained a permanent loss of enjoyment of life, loss of life's pleasures and the loss of life's hedonic pleasures; she has been permanently prevented from performing all of her usual duties, occupations, recreational activities and avocations all to her and her beneficiaries' loss and detriment.

34.     Solely and as a direct result of the negligence, gross negligence, carelessness, recklessness and outrageous acts of Defendant Hawksbill, Plaintiff sustained the loss of companionship, loss of care, mental anguish, maintenance, support, services, advice, counsel and reasonable contributions of pecuniary value, that Plaintiff in all reasonable probability would have received from decedent since the date of her passing; and Plaintiff sustained the loss of companionship, loss of care, mental anguish, maintenance, support, services, advice, counsel and reasonable contributions of pecuniary value, that Plaintiff in all reasonable probability would have received from decedent in the future.

### C. Rosie Glover's Seizures

35.     At all times relevant hereto, Rosie Glover is a minor child and the daughter of Jamie and Bryan. Rosie is currently three (3) years old.

36.     At the time Jamie was taking the Kratom distributed by Defendant Hawksbill, Rosie was only one (1) year old and was nursing from Jamie.

37.     At the time Jamie was taking the Kratom distributed by Defendant Hawksbill, and while Rosie was nursing, Rosie had multiple seizures that required hospitalization.

38.     After Jamie's passing, Rosie's seizures ceased immediately.

39.     Defendant Hawksbill knew, or in the exercise of reasonable care, should have known of the devastating injuries, addiction and/or death that would befall its customers upon ingestion of its product, Kratom.

40.     Defendant Hawksbill knew, or in the exercise of reasonable care, should have known that selling its Kratom in packaging that contained no warning or information regarding the dangerous side effects of the Kratom would result in serious injury, addiction and/or death to its customers.

41.     Despite this knowledge, Defendant Hawksbill outrageously continued to sell its Kratom and took absolutely no steps to provide its unsuspecting customers, including Jamie, with any information or warnings of the potentially dangerous side effects. Jamie's ingestion of the Kratom had a direct and significant medical effect on Rosie, resulting hospitalization. It is not yet known the extent of the damage Rosie sustained as a result of her many seizures.

42.     Defendant Hawksbill's deliberate decision to deprive its customers of warnings and information regarding the dangerous effects of Kratom was made for purely economic reasons which resulted in damage to Rosie.

43.     Defendant Hawksbill chose profits over the safety of its customers and its customer's family members, including Rosie Glover.

### V.     COUNT I – WRONGFUL DEATH

44.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 – 43 herein.

45.     Plaintiff asserts this Wrongful Death claim pursuant to C.R.S. §§ 13-21-201 to 13-21-204.

Exhibit A to Notice of Removal

46.     At all times relevant hereto, Defendant Hawksbill designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce Kratom and products containing Kratom, such as the Kratom that caused the death of Jamie.

47.     Defendant Hawksbill owed a duty to those persons purchasing its products, and ingesting its products, including Jamie, to exercise reasonable care, and to provide a reasonably safe product, free from defects which could cause unreasonable danger.

48.     Defendant Hawksbill knew or should have known of the dangerous and potentially lethal effects of Kratom, which Defendant Hawksbill intended its customers to ingest or otherwise consume.

49.     Defendant Hawksbill knew or should have known of the devastating injuries, addiction and/or death that would befall its customers upon the ingestion and/or consumption of its Kratom.

50.     Despite this knowledge, Defendant Hawksbill breached its duties by utterly failing to design assemble, manufacture, sell, supply, distribute and/or place into the stream of commerce a product free of defects to prevent the unknowing consumption of the dangerous product.

51.     Defendant Hawksbill also outrageously and deliberately failed to include warning and/or information regarding the dangerous and lethal effects of its Kratom product.

52.     Defendant Hawksbill's deliberate decision not to include warnings and/or information with its Kratom product was made for purely economic reasons and was made in reckless, willful and wanton disregard for the health and rights of its customers, including Jamie.

53.     The negligence, gross negligence, carelessness, recklessness and outrageous conduct of Defendant Hawksbill, its agents, servants and/or employees, which are the proximate

8

Exhibit A to Notice of Removal

cause of the accidents described herein, and the injuries and death to Jamie, consisted of the

following:

    a.  Designing, assembling, manufacturing, selling, supplying and/or distributing a product in a defective condition;

    b.  Designing, assembling, manufacturing, selling, supplying and/or distributing the subject Kratom without warnings or information of any kind regarding the potentially dangerous effects of the Kratom;

    c.  Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was unreasonably dangerous to its intended and foreseeable users;

    d.  Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was unreasonably dangerous for its intended and foreseeable users;

    e.  Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was not safe for all of its intended and represented purposes;

    f.  Continuing to design, manufacture, sell, supply and/or distribute Kratom and Kratom-containing products to U.S. consumers, including Jamie, despite Defendant Hawksbill's knowledge that its Kratom and Kratom-containing products would unreasonably expose users to devastating injuries, health risks, addiction and/or death;

    g.  Continuing to design, manufacture, sell, supply and/or distribute Kratom and Kratom-containing products to U.S. consumers, including Jamie, with the knowledge that the Kratom would unreasonably expose users to devastating injuries, health risks, addiction and/or death, but utterly failing to provide adequate, explicit warnings to the ultimate users of the Kratom about the significant risks associated with its use;

    h.  Designing, assembling, manufacturing, selling, supplying and distributing the Kratom and Kratom-containing products to U.S. consumers, including Jamie, as an "herbal supplement" despite knowing or being in the position to know that Kratom acts as an opioid as has all of the same addictive and dangerous qualities and effects as an opioid;

    i.  Despite having actual knowledge of prior deaths and injuries caused by use of Kratom and/or Kratom-containing products, failing to make all the necessary corrections and/or changes to eliminate the risk of an prevent future injuries and/or deaths;

    j.  Despite having actual knowledge of prior deaths and injuries caused by use of Kratom and/or Kratom-containing products, failing to investigate, retain, analyze

Exhibit A to Notice of Removal

prior incident information in order to warn and/or notify ultimate users and consumers;

k.  Despite having actual knowledge of prior deaths and injuries caused by use of Kratom and/or Kratom-containing products, failing to adequately warn users and consumers that the Kratom was capable of causing injuries and/or death;

l.  Despite being a supplier, failing to give any warnings and/or instructions of the possible risks of using the product that may be required, or that are created by the inherent limitations in the safety of such use;

m.  Designing, assembling, manufacturing, selling, supplying and distributing a product, the risks of which outweigh its utility;

n.  Failing to have adequate warnings on and/or with the product;

o.  Failing to have adequate warnings on and/or with the product despite knowing that the dangers and risks associated with the product were unknown and unknowable to the ordinary consumer and/or user, including Jamie;

p.  Failing to have adequate warnings on and/or with the product despite knowing that the dangers and risks associated with the product would cause unreasonable and severe injuries, addiction and/or death;

q.  Failing to provide warnings to all potential users;

r.  Designing, assembling, manufacturing, selling, supplying and/or distributing a product without simple and cost-effective safety devices and/or measures, including but not limited to adequate warnings and/or instructions;

s.  Failing to adequately and properly test and/or research said product; and

t.  Failing to take steps to make the product safer.

54.  By reason of the negligence, gross negligence and recklessness of Defendant Hawksbill, as aforesaid, Plaintiff's decent Jamie Glover was caused to sustain severe and devastating injuries that led to her death, resulting in damages and losses.

55.  By conducting itself as set forth above, Defendant Hawksbill's acts and/or omissions were a substantial factor in, the factual cause of, and/or increased the risk of harm of Jamie Glover's severe injuries and ultimate death.

Exhibit A to Notice of Removal

56.     By conducting itself as set forth above, Defendant Hawksbill's acts and/or omissions were a substantial factor in, the factual cause of, and/or increased the risk of harm of Rosie Glover's severe injuries.

## VI.     COUNT II – NEGLIGENCE

57.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 – 56 herein.

58.     At all times relevant hereto, Defendant Hawksbill designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce Kratom and products containing Kratom, such as the Kratom that caused the death of Jamie, and the seizures of Rosie.

59.     Defendant Hawksbill owed a duty to those persons purchasing its products, and ingesting its products, including Jamie and Rosie, to exercise reasonable care, and to provide a reasonably safe product, free from defects which could cause unreasonable danger.

60.     Defendant Hawksbill knew or should have known of the dangerous and potentially lethal effects of Kratom, which Defendant Hawksbill intended its customers to ingest or otherwise consume.

61.     Defendant Hawksbill knew or should have known of the devastating injuries, addiction and/or death that would befall its customers upon the ingestion and/or consumption of its Kratom.

62.     Despite this knowledge, Defendant Hawksbill breached its duties by utterly failing to design assemble, manufacture, sell, supply, distribute and/or place into the stream of commerce a product free of defects to prevent the unknowing consumption of the dangerous product.

Exhibit A to Notice of Removal

63.     The negligence, gross negligence, carelessness, recklessness and outrageous conduct of Defendant Hawksbill, its agents, servants and/or employees, which are the proximate cause of the accidents described herein.

64.     By reason of the negligence, gross negligence and recklessness of Defendant Hawksbill, as aforesaid, Plaintiff's decent Jamie Glover was caused to sustain severe and devastating injuries that led to her death, resulting in damages and losses.

65.     By reason of the negligence, gross negligence and recklessness of Defendant Hawksbill, as aforesaid, Plaintiff's minor daughter Rosie Glover was caused to sustain severe and devastating injuries leading to her seizures, resulting in damages and losses.

66.     By conducting itself as set forth above, Defendant Hawksbill's acts and/or omissions were a substantial factor in, the factual cause of, and/or increased the risk of harm of Jamie Glover's severe injuries and ultimate death.

67.     By conducting itself as set forth above, Defendant Hawksbill's acts and/or omissions were a substantial factor in, the factual cause of, and/or increased the risk of harm of Rosie Glover's severe injuries.

## VII.    COUNT III – PRODUCT LIABILITY

68.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 – 67 herein.

69.     Defendant Hawksbill, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under § 402(A) of the Restatement (Second) of Torts because:

   a. Defendant Hawksbill is engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce Kratom and/or products containing Kratom, such as the Kratom that caused Jamie Glover's death;

Exhibit A to Notice of Removal

    b.   The product involved in the subject incident was marketed and placed in the general stream of commerce by Defendant Hawksbill;

    c.   The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce; and

    d.   The product was designed, assembled, manufactured, sold, supplied, distributed and/or placed into the stream of commerce in the defective condition for the reasons set forth herein.

70.     The product was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

71.     The product was in a defective condition as it came with absolutely no warnings or information regarding the dangers and risks associated with the product.

72.     The defective condition of the product caused Jamie's injuries, death and damages as described above; and caused Rosie's injuries and damages as described above.

73.     Defendant Hawksbill, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors, are strictly liable under § 402(A) of the Restatement (Second) of Torts and the Restatement (Third) of Torts: Product Liability, by:

    a.   Designing, assembling, manufacturing, selling, supplying and/or distributing a product in a defective condition;

    b.   Designing, assembling, manufacturing, selling, supplying and/or distributing the subject Kratom without warnings or information of any kind regarding the potentially dangerous effects of the Kratom;

    c.   Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was unreasonably dangerous to its intended and foreseeable users;

Exhibit A to Notice of Removal

d. Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was unreasonably dangerous for its intended and foreseeable users;

e. Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was not safe for all of its intended and represented purposes;

f. Continuing to design, manufacture, sell, supply and/or distribute Kratom and Kratom-containing products to U.S. consumers, including Jamie, despite Defendant Hawksbill's knowledge that its Kratom and Kratom-containing products would unreasonably expose users to devastating injuries, health risks, addiction and/or death;

g. Continuing to design, manufacture, sell, supply and/or distribute Kratom and Kratom-containing products to U.S. consumers, including Jamie, with the knowledge that the Kratom would unreasonably expose users to devastating injuries, health risks, addiction and/or death, but utterly failing to provide adequate, explicit warnings to the ultimate users of the Kratom about the significant risks associated with its use;

h. Designing, assembling, manufacturing, selling, supplying and distributing the Kratom and Kratom-containing products to U.S. consumers, including Jamie, as an "herbal supplement" despite knowing or being in the position to know that Kratom acts as an opioid as has all of the same addictive and dangerous qualities and effects as an opioid;

i. Despite having actual knowledge of prior deaths and injuries caused by use of Kratom and/or Kratom-containing products, failing to make all the necessary corrections and/or changes to eliminate the risk of an prevent future injuries and/or deaths;

j. Despite having actual knowledge of prior deaths and injuries caused by use of Kratom and/or Kratom-containing products, failing to investigate, retain, analyze prior incident information in order to warn and/or notify ultimate users and consumers;

k. Despite having actual knowledge of prior deaths and injuries caused by use of Kratom and/or Kratom-containing products, failing to adequately warn users and consumers that the Kratom was capable of causing injuries and/or death;

l. Despite being a supplier, failing to give any warnings and/or instructions of the possible risks of using the product that may be required, or that are created by the inherent limitations in the safety of such use;

m. Designing, assembling, manufacturing, selling, supplying and distributing a product, the risks of which outweigh its utility.

14

Exhibit A to Notice of Removal

74.     By conducting itself as set forth above, Defendant Hawksbill's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Jamie Glover's devastating injuries and tragic death; and of Rosie Glover's devastating injuries.

75.     The subject Kratom was not equipped at the time it left Defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonably foreseeable misuses.

76.     By reason of breach of said duties, Defendant Hawksbill, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, Plaintiff's decedent was caused to sustain devastating injuries that led to her death, as set for above; and Rosie Glover was caused to sustain devastating injuries, as set forth above.

## VIII.   COUNT IV – BREACH OF WARRANTY

77.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 – 76 herein.

78.     In designing, manufacturing, marketing, promoting, selling, distributing, delivering and/or supplying the subject Kratom, Defendant Hawksbill impliedly warranted that the Kratom was merchantable, fit and safe for its intended use and the ordinary purposes for which it was sold, and that it was free from defects.

79.     The subject Kratom as designed and supplied was not safe for its intended use and, as a result, Defendant Hawksbill breached the implied warranty of habitability.

80.     Jamie and Rosie are within the reasonable category of persons which could reasonably be expected to use and be exposed to Kratom and its effects.

Exhibit A to Notice of Removal

81.     Defendant Hawksbill's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Jamie's devastating injuries and ultimate death; and of Rosie's devastating injuries.

WHEREFORE, Plaintiff prays for judgment against Defendant Hawksbill in the amount established by the evidence, together with costs, interest, attorney's fees, expert witness fees and such other further relief as this Court might deem just and proper.

**PLAINTIFF DEMANDS TRIAL TO JURY OF ALL ISSUES SO TRIABLE.**

Respectfully submitted this 13th day of August 2019.

PRO SE PLAINTIFF

/s/ BRYAN GLOVER
Bryan Glover

**Plaintiff's Address:**
1738 Jules Court
Highlands Ranch, CO 80126

Exhibit A to Notice of Removal