IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 2019-cv-03283-CMA-KLM

BRYAN GLOVER, Individually and as Representative of the ESTATE OF JAMIE GLOVER, and on behalf of ROSIE GLOVER,

    Plaintiff,

v.

HAWKSBILL BOTANICALS INC., a Florida Corporation,

    Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FED.R.CIV. 12(b)(2) MOTION TO DISMISS FOR LACK OF JURISDICTION**

---

    Plaintiff Bryan Glover, Individually and as a Representative of the Estate of Jamie Glover and on behalf of Rosie Glover ("Plaintiff"), by and through counsel at Godfrey Johnson, P.C., hereby submits his Response to Defendant Hawksbill Botanicals Inc.'s Fed.R.Civ.P. 12(b)(6) Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss"), stating as follows:

## I.    BACKGROUND

    This case is about the death of Jamie Glover ("Jamie"), a thirty-three-year-old wife and mother of five children who passed away at her home in Douglas County, Colorado in August 2017. The State of Colorado Certificate of Death lists the manner of Jamie's death as an "accident," and lists the cause of death as "complications of combined drug intoxication." In the nine months leading up to her death, Jamie was consuming a product called Kratom, which is marketed and sold by Defendant Hawksbill Botanicals Inc. ("Defendant Hawksbill") as an herbal supplement.

Kratom, or *Mitragyna speciosa*, is a plant grown in Thailand, Malaysia, Indonesia and Papua New Guinea. Kratom has a deadly history and is under scrutiny by the United States Drug Enforcement Administration ("DEA") and the Food and Drug Administration ("FDA"). It has been banned in as many as six states in the United States, and has been banned in the Colorado municipalities of Denver, Parker and Monument.[1] Companies that produce and sell Kratom, including Defendant Hawksbill, claim that Kratom can be used to cure or treat a variety of conditions or ailments, including anxiety, depression, fatigue, and even opioid cessation, despite the fact that Kratom is itself an opioid. In August 2016, the DEA announced that it was temporarily reclassifying Kratom as a Schedule I drug; however, after organized backlash by Kratom advocacy groups, such as the American Kratom Association, the DEA decided in October 2016 to postpone the reclassification of Kratom to allow for further public comment. The FDA has also identified the lethal effects of Kratom, citing 44 reported deaths "associated with the use of Kratom." The FDA has directly warned suppliers of Kratom, including Defendant Hawksbill, that they must cease the sale of products containing Kratom due to the dangerous and potentially fatal effects on unsuspecting consumers. Despite this warning, Defendant Hawksbill continues to sell Kratom without any warnings whatsoever concerning its dangerous effects.

Defendant Hawksbill sold Kratom to Jamie on at least thirteen separate occasions in the last nine months of Jamie's life, including making four sales to Jamie in the final four weeks of her life. For each of the thirteen sales, Defendant Hawksbill, headquartered in Port Saint Lucie, Florida, shipped the Kratom to Jamie's residence in Colorado. The

---

[1] *See* https://kraoma.com/kratom-legality-united-states/

packaging and labeling used by Defendant Hawksbill when mailing the Kratom to Jamie were without any warnings or information of any kind regarding the effects of the substance. Defendant Hawksbill's website[2] is also silent as to any warnings associated with the consumption of Kratom.

In its Motion to Dismiss, Defendant Hawksbill asserts that this Court lacks jurisdiction for this matter. Defendant Hawksbill cites a litany of reasons for which it alleges this Court does not have jurisdiction, almost all of which can be distilled down to an argument that Defendant Hawksbill is not physically present in Colorado, and that Defendant Hawksbill never directly solicited business from Jamie or other Colorado residents, and therefore Colorado is not the appropriate jurisdiction. Plaintiff disagrees because Colorado, under its long-arm statute Colo. Rev. Stat. § 13-1-124, has the authority to bind Defendant Hawksbill to this Court; and because Defendant Hawksbill personally availed itself to the State of Colorado by establishing minimum contacts with this State. Not only did Defendant Hawksbill sell Kratom to a Colorado resident, and ship the Kratom to Jamie's home in Colorado on a repeated basis, but Defendant Hawksbill also routinely sends marketing email to its customer list wherein it offers coupons and discounts to its customers, including Jamie. Defendant Hawksbill sends these marketing email to its customers *after* the customers make their initial Kratom purchase, meaning that Defendant Hawksbill has notice of the physical location of the customers from which it is soliciting business.

Defendant Hawksbill's Motion must be denied.

---

[2] hawksbillbotanicals.com

## II.   DISCUSSION

### A. Statement of Facts

1.       On August 14, 2017 thirty-three-year-old Jamie Glover ("Jamie") passed away. At the time of her death, Jamie was the wife of Plaintiff Bryan Glover and mother to five (5) children, including Plaintiff Rosie Glover. *See* Exhibit A, Affidavit of Bryan Glover at ¶ 1.

2.       Jamie's death occurred in her home, located at 1738 Jules Court, Highlands Ranch, Colorado 80126. Id. at ¶ 2.

3.       The State of Colorado Certificate of Death lists the manner of Jamie's death as an "accident," and lists the cause of death as "complications of combined drug intoxication." *See* Exhibit B.

4.       In the several months leading-up to her death Jamie was purchasing and consuming a product called Kratom. *See* Exhibit A at ¶ 3.

5.       Defendant Hawksbill was selling the Kratom to Jamie. Id. at ¶ 4.

6.       Beginning on December 12, 2016 and continuing up until the day of her death, Defendant Hawksbill sold Jamie Kratom on at least thirteen separate occasions. Id. at ¶ 5.

7.       Jamie's credit card statements demonstrate that Defendant Hawksbill sold Kratom to  Jamie on or about:[3] December 12, 2016; December 23, 2016; February 6, 2017; March 3, 2017; April 10, 2017; April 21, 2017; May 12, 2017; June 1, 2017; June 28, 2017; July 17, 2017; July 24, 2017; July 28, 2017 and August 14, 2017.[4] Id. at ¶ 6.

---

[3]     Plaintiff uses the phrase "on or about" because the dates listed in para. 6 are the dates referenced on the credit card statements. The actual date of purchase may have been a day, or two days, prior to the purchase date referenced on the credit card statements.
[4]     The date of Jamie's death.

8.      The total amount Jamie paid to Defendant Hawksbill for the Kratom during the time period referenced in paragraph 6 totals just under $2,000. Id. at ¶ 7.

9.      In the last month of Jamie's life, Defendant Hawksbill sold and delivered four separate shipments of Kratom to Jamie at a total cost of $592.76. Id. at ¶ 8.

10.     Defendant Hawksbill mailed the Kratom to Jamie, at the Glover's residence in Highlands Ranch, Colorado. Id. at ¶ 9.

11.     The packaging and labeling used by Defendant Hawksbill when mailing the Kratom to Jamie was without any warnings or information of any kind regarding the effects of the substance. Id. at ¶ 10.

12.     At the time Jamie was taking the Kratom distributed by Defendant Hawksbill, Rosie was only one (1) year old and was nursing from Jamie. Id. at ¶ 11.

13.     At the time Jamie was taking the Kratom distributed by Defendant Hawksbill, and while Rosie was nursing, Rosie had multiple seizures that required hospitalization. Rosie's medical treatments were provided in Colorado. Id. at ¶ 12.

14.     After Jamie's passing, Rosie's seizures ceased immediately. Id. at ¶ 13.

**B.    STANDARD OF REVIEW**

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Old Republic Ins. Co. v. Continental Motors, Inc*., 877 F.3d 895, 903 (10th Cir. 2017), citing *Walden v. Fiore*, U.S. 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014). The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000); *see* Fed. R. Civ. P. 4(k)(1)(A). Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124,

extends jurisdiction to the Constitution's full extent. *Benton v. Cameco Corp*., 375 F.3d 1050, 1075.

To establish jurisdiction over a non-resident defendant, a plaintiff must show that the exercise of jurisdiction is authorized under the relevant long-arm statute, and does not offend due process. *Wenz v. Memery Crystal*, 55. F.3d 1503, 1506 (10th Cir. 1995). Because the Colorado Supreme has determined that Colorado's long-arm statute is coextensive with due with due process requirements, *Keefe v. Kirschenbaum & Kirschenbaum*, P.C. 40 P. 3d. 1267, 1270 (Colo. 2002), the inquiry is thus simplified into one basic question: whether the exercise of personal jurisdiction comports with the requirements of due process under the Fourteenth Amendment to the United States Constitution. *AST Sports Sci., Inc. v. CLF Distrib. Ltd*., 514 F.3d 1054, 1057 (10th Cir. 2008).

However, even if this test is met, a court must still consider whether "the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091. In this inquiry the court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial systems interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Id*. at 1095.

Due process requires both that the defendant "purposefully established minimum contacts within the forum State" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(quoting *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state. *Daimler AG v. Bauman, et. al.*, 134 S.Ct. 746, 754 (2014).

**C.    THIS COURT HAS SPECIFIC JURISDICTION OVER DEFENDANT HAWKSBILL**

In its Motion to Dismiss, Defendant Hawksbill makes several misstatements of fact in an attempt to distance itself from Colorado. However, the attached Affidavit of Bryan Glover,[5] and the marketing email Defendant Hawksbill sends to its customers in Colorado,[6] make it clear that it purposefully and deliberately directed business activities at Colorado.

**1.    Defendant Hawksbill Purposefully Directed its Activities at Colorado**

In Colorado specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 476-77, 105 S.Ct. 2174; *Shrader v. Biddinger*, 633 F.3d 1235, 1239-40 (10th Cir. 2011)(quotations omitted). The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have "purposefully directed its activities at residents of the forum state," and (ii) that "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Shrader* 633 F.3d at 1239 (quotations omitted); *see also Burger King*, 471 U.S.at 475, 105 S.Ct. 2174.

---

[5] Exhibit A.
[6] Exhibits C and D.

The purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, ... or of the unilateral activity of another party or a third person." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. Mere foreseeability of causing injury in another state is insufficient to establish purposeful direction. *Id*. at 474, 105 S.Ct. 2174. But "where the defendant deliberately has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there." *Id*. at 475-76, 105 S.Ct. 2174. Accordingly, "[i]t is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Id*. at 476, 105 S.Ct. 2174."

Here, it is undisputed that Defendant Hawksbill was selling Kratom to Jamie. Ex. A at ¶ 4; Dkt. 8 at p. 5 ¶ s, t and p. 6 ¶ u. Beginning on December 12, 2016 and continuing up until the day of her death, Defendant Hawksbill sold Jamie Kratom on at least thirteen separate occasions. Id. at ¶ 5. Jamie's credit card statements demonstrate that Defendant Hawksbill sold Kratom to  Jamie on or about:[7] December 12, 2016; December 23, 2016; February 6, 2017; March 3, 2017; April 10, 2017; April 21, 2017; May 12, 2017; June 1, 2017; June 28, 2017; July 17, 2017; July 24, 2017; July 28, 2017 and August 14, 2017.[8] Id. at ¶ 6. The total amount Jamie paid to Defendant Hawksbill for the Kratom during the time period referenced in paragraph 6 totals just under $2,000. Id. at ¶ 7. In the last month of Jamie's life, Defendant Hawksbill sold and delivered four separate shipments of Kratom to Jamie at a total cost of $592.76. Id. at ¶ 8. Defendant Hawksbill shipped the Kratom to

---

[7]    Plaintiff uses the phrase "on or about" because the dates listed in para. 6 are the dates referenced on the credit card statements. The actual date of purchase may have been a day, or two days, prior to the purchase date referenced on the credit card statements.
[8]    The date of Jamie's death.

Jamie, at the Glover's residence in Highlands Ranch, Colorado. Id. at ¶ 9; Dkt. 8 at p. 6 ¶ u, v.

Defendant Hawksbill not only ships Kratom into Colorado, but it also engages in marketing and solicitation of business from Colorado residents through the practice of sending email to its customers. Examples of the types of marketing email Defendant Hawksbill sends to Colorado residents are attached as Exhibits C and D. Upon information and belief, these email are sent by Defendant Hawksbill to all of its customers after each customer makes their first Kratom purchase from Defendant Hawksbill.

Exhibit C is an email dated August 20, 2019 from Hawksbill Botanicals' Gmail account[9] to Britta Vitale.[10] Defendant Hawksbill then bcc's (blind copies) its customers on the email, presumably as a mass marketing business practice through email distribution. The primary purpose of the August 20th email appears to be to educate its customers on ways to make payment for Kratom purchases. Defendant Hawksbill even embedded a web address for a YouTube page presumably for the purpose of further instructing its customers on how to make payment. In the last paragraph of Exhibit C, Defendant Hawksbill is soliciting business from its customers - including Colorado residents - by offering a coupon code for various Kratom strains.

Exhibit D is another marketing email from Hawksbill Botanicals' Gmail account to Britta Vitale, dated November 24, 2019. Defendant Hawksbill also blind copied its customers on this marketing email. As is the case with the August 20, 2019 email, Defendant Hawksbill is again soliciting business from its customers – including Colorado

---

[9] hawksbillbotanicals@gmail.com
[10] Note that the Gmail address for Hawksbill Botanicals account is the exact same email address under the name Britta Vitale, save for two letter capitalization differences.

residents – by offering discounts on its Kratom products. This particular offer is for a 20% discount on all Kratom capsules purchased on or before January 1, 2020. Plaintiff also notes that, on the "PS" section of the November 24, 2019 email, Defendant Hawksbill is informing its customers that "our address has changed." Defendant Hawksbill then provides a new business address to its customers, in Maple Plain, MN.

Exhibits C and D are examples of the types of marketing email Defendant Hawksbill sends to its customers, including Jamie when she was still alive. It only takes a single purchase of Kratom from Defendant Hawksbill to get on its email distribution list. In its Motion to Dismiss, Defendant Hawksbill asserts that:

- [It] does not advertise or market to Colorado (or any state), Dkt. 8 p. 5 ¶ n;

- [It] does not advertise or market in any way whatsoever; Dkt. 8 p. 5 ¶ o;

- [It] never solicited Ms. Glover, a Colorado resident, for business, Dkt. 8 p. 5 ¶ r; and

- The only contact Defendant has, or has ever had, with Colorado is occasionally selling botanicals to Colorado residents who purchase products through Defendant's website, Dkt. 8 p. 6 ¶ x.

Defendant Hawksbill's misstatements of fact regarding its history of marketing its product to Colorado residents, and soliciting business from Colorado residents, cannot be overlooked.

As the Court can see by reviewing this Response and the attached exhibits, Defendant Hawksbill has purposefully directed its activities at residents of the Colorado, thereby satisfying the first part of the minimum contacts test. *Shrader* 633 F.3d at 1239.

The purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, ... or of the unilateral activity of another party or a third person." *Burger King* 471 U.S. at 475, 105 S.Ct. 2174. Mere foreseeability of causing injury in another state is insufficient to establish purposeful direction. *See id*. at 474, 105 S.Ct. 2174. But "where the defendant deliberately has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there." *Id*. at 475-76, 105 S.Ct. 2174. Accordingly, "[i]t is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Id*. at 476, 105 S.Ct. 2174."

Through its repeated Kratom sales to Colorado residents, shipping its Kratom to Colorado, and through and its marketing to and solicitation of business from Colorado residents, Defendant Hawksbill has deliberately engaged in significant activities with Colorado, thereby availing itself of the privilege of conducting business here. It is in no way unreasonable to require Defendant Hawksbill to submit to this Court's jurisdiction.

**2.    Plaintiff's Injuries Arose Out of Defendant Hawksbill's Colorado Activities**

The second part of the minimum contacts test requires a showing that that "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Id.* at 1239. Jamie's death occurred in her home, located at 1738 Jules Court, Highlands Ranch, Colorado 80126. Exhibit A at ¶ 2. The State of Colorado Certificate of Death lists the manner of Jamie's death as an "accident," and lists the cause of death as "complications of combined drug intoxication." Exhibit B. In the several months leading-up to her death Jamie was purchasing and consuming Kratom. Exhibit A at ¶ 3. Defendant Hawksbill was

selling the Kratom to Jamie. Id. at ¶ 4. At the time Jamie was taking the Kratom distributed by Defendant Hawksbill, Rosie was only one (1) year old and was nursing from Jamie. Id. at ¶ 11. At the time Jamie was taking the Kratom distributed by Defendant Hawksbill, and while Rosie was nursing, Rosie had multiple seizures that required hospitalization. Rosie's medical treatments were provided in Colorado. Id. at ¶ 12. After Jamie's passing, Rosie's seizures ceased immediately. Id. at ¶ 13.

Defendant Hawksbill sold, and shipped, Kratom to Jamie at her home in Colorado thirteen times in the last nine months of Jamie's life, including four times in the last four weeks of her life. The Death Certificate unambiguously states that Jamie died from complications of drug intoxication. Exhibit B. Defendant Hawksbill's activities in Colorado caused Bryan Glover and his children to lose Jamie forever, and caused Rosie to have many seizures in the last few months of her mother's life. It is undisputed that Plaintiff's injuries were caused by Defendant Hawksbill's activities in Colorado.

### 3. Exercising Personal Jurisdiction Over Defendant Does Not Offend Notions of Fair Play and Substantial Justice

Defendant Hawksbill argues that requiring it to litigate in Colorado would offend the notions of fair play and substantial justice. Dkt. 8 pp. 12-13. In Colorado, a court must consider whether "the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091. In this inquiry the court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial systems interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* at 1095.

Here, the burden on Defendant Hawksbill to litigate in Colorado, as opposed to Florida or its apparent new home business forum of Minnesota, is minimal. As is stated in its Motion to Dismiss, Defendant Hawksbill only has one full-time employee, Britta Vitale. Dkt. 8 p. 4 at ¶ d, j.  Given Defendant Hawksbill only has one full-time employee, and therefore a minimal number of witnesses located in Florida, there is very minimal impact caused by a witness(es) having to travel to Colorado to appear for trial. Conversely, the Plaintiff would be substantially burdened by having to litigate in Florida or Minnesota. Due to the actions of Defendant Hawksbill, Bryan Glover is now a single parent having to raise five children - teenagers and toddlers - all on his own. Mr. Glover is supporting his family of six on a single, fixed income. The toll on Plaintiff of having to litigate outside of the State of Colorado would be immense.

The State of Colorado has significant interests at play here as well. Kratom has a deadly history and has been banned in as many as six states. It has also been banned in many municipalities around the country, including Denver, Parker and Monument (Colorado).  Kratom poses a significant threat to Colorado residents, and this Court must have the ability to review the effects Kratom can have so that Colorado residents can be adequately warned of its dangers.

There is nothing unfair about requiring Defendant Hawksbill to litigate in Colorado.

### 4.    Plaintiff Has Made a Prima Facie Showing of Personal Jurisdiction

When the Court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc.* 514 F.3d at 1057 (10th Cir. 2008). "The plaintiff[s] may make this prima facie showing, by demonstrating, via affidavit or

other written materials, facts that if true with support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In considering this question, the court must accept all well pleaded facts as true and must resolve any factual disputes in favor of the plaintiff." *Wenz*, 55 F.3d at 1505 (10th Cir. 1995).

By way of affidavit, Plaintiff has demonstrated facts that are true and that support jurisdiction over Defendant Hawksbill. Plaintiff bolstered his position by also providing marketing communications from Defendant Hawksbill to Colorado residents. Defendant Hawksbill was deliberately directing business activities at Colorado, making it foreseeable and reasonable for Defendant Hawksbill to be haled into this Court. Defendant's Motion to Dismiss must be denied.

WHEREFORE, Plaintiff respectfully requests this court deny Defendant's Fed.R.Civ.P. 12(b)(6) Motion to Dismiss for Lack of Personal Jurisdiction.

DATED:     February 23, 2020

By:     s/*Aaron R. Bakken*
Aaron R. Bakken, #43138
Godfrey Johnson, P.C.
9557 S. Kingston Court
Englewood, Colorado 80112
303-228-0700
E-mail:  bakken@gojolaw.com
*Attorney for Plaintiff*

14

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February 2020, the foregoing Response to Defendant's Fed.R.Civ.P. 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction was electronically filed and served with the Clerk of Court using the CM/ECF system.

Eric R. Jonsen
Jeremy T. Jonsen
1600 Stout Street, Suite 1100
Denver, Colorado 80202
Telephone: 303-534-4499
E-mail: erjonsen@jonsen.net
E-mail: jjonsen@allen-vellone.com
*Attorney(s) for Defendant*

/s/ *Aaron R. Bakken*
Aaron R. Bakken
*Attorney for Plaintiff*